IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JESSICA RYMAN,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 5:25-CV-02794-DCN<br><br>JUDGE DONALD C. NUGENT<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Plaintiff Jessica Ryman challenges the Commissioner of Social Security's decision denying supplemental security income (SSI). (ECF #1) The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry of Dec. 29, 2025). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Ryman applied for SSI on September 21, 2023, alleging disability beginning September 6, 2022. (Tr. 238). After her claim was denied initially and on reconsideration, Ms. Ryman requested a hearing before an Administrative Law Judge. (Tr. 155, 161, 181). On November 20, 2024, Ms. Ryman (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 115-33). On February 26, 2025, the ALJ determined Ms. Ryman was not disabled. (Tr. 79-86). On December 18, 2025, the Appeals Council denied Ms. Ryman's request for review of the ALJ's decision, making the ALJ's decision the final decision of the

Commissioner. (Tr. 6-9; *see also* 20 C.F.R. § 416.1481). Ms. Ryman then timely filed this action. (ECF #1).

## Factual Background[1]

### I. Personal and Vocational Evidence

Ms. Ryman was 51 years old on the alleged onset date and 53 years old at the administrative hearing. (*See* Tr. 134). She completed ninth grade and though she worked as a machine operator, that work did not qualify as past relevant work experience. (*See* Tr. 267, 85).

### II. Relevant Medical Evidence

Ms. Ryman suffers from several heart-related conditions, including coronary artery disease, aortic and mitral valve regurgitation, stable angina, hypertension, and hyperlipidemia; she also has a history of coronary angioplasty, multiple stents, and a heart attack. (*See, e.g.*, Tr. 1013-14, 448, 812, 805, 441-42). These conditions result in an abnormal heart rhythm, chronic shortness of breath with activity or intermittently while lying down, and chest pain and dizziness after activity. (*See, e.g.*, Tr. 1015, 812, 805). She underwent a surgical replacement of an aortic valve with a mechanical valve in October 2023. (*See* Tr. 439, 448). She is treated for these conditions with a bevy of medications. (*See, e.g.*, Tr. 812, 806, 449-50). She also has regular appointments monitoring her heart, blood pressure, and blood clotting. (*See* Tr. 851, 843, 834, 827, 818, 972, 967, 965, 961, 976, 978, 981, 984) (ordered chronologically).

---

[1] Ms. Ryman solely challenges the ALJ's evaluation at Step Five of the number of jobs she could perform and does not challenge the ALJ's evaluation of her impairments. (*See* ECF #10 at PageID 1147, 1152-55). As such, I limit my discussion of the record to only the necessary background.

## III. Testimonial Evidence

After Ms. Ryman testified about her impairments, the ALJ asked the VE to assume an individual with Ms. Ryman's age, education, work experience, and residual functional capacity (RFC). (*See* Tr. 130; *compare id. with* Tr. 83 (setting out the same RFC)). The VE opined that such an individual could work as a router, collator operator, and routing clerk. (Tr. 131). The VE also stated there were approximately 90,000 router positions, 24,000 collator operator positions, and 34,000 routing clerk positions in the national economy.[2] (*Id.*). She also explained she had reduced the number of router positions to accommodate the limitation to standing and walking for only four hours in a workday. (*Id.*).

The VE affirmed her testimony was consistent with the *Dictionary of Occupational Titles* (DOT) and the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO) but the VE clarified the DOT "does not address the absenteeism, time off task, a reduction of standing and walking for four hours at the light exertional level, differentiates between types of climbing, and therefore I utilized my professional training and experience to provide them." (Tr. 131-32).

On cross-examination, Ms. Ryman's counsel clarified if the VE also reduced the number of collator operator and routing clerk positions "for the four hours stand/walk" as she had with the number of router positions. (Tr. 132). The VE confirmed she "reduced it for all of the jobs." (*Id.*). Ms. Ryman's counsel did not ask any further questions.

[2] The transcript of the hearing recorded the VE as testifying there were "approximately 90" router positions in the national economy. (Tr. 131). Both Ms. Ryman and the Commissioner agree this was a transcription error. (*See* ECF #10 at PageID 1153 n.1; ECF #12 at PageID 1163 n.1).

## IV. Post-Hearing Evidence

After the hearing, the ALJ submitted interrogatories for the VE to explain her approach to estimating job numbers. (*See* Tr. 334-35). The VE explained she relies "on federally published information from Department of Labor including Bureau of Labor Statistics resources." (Tr. 334). Using those resources, the VE explained her methodology as follows:

> I begin with a representative DOT code, then use OEWS data to obtain national job numbers for the OEWS/SOC group containing my specific DOT code. I review ORS data to obtain the percentages of occupations within that OEWS/SOC group that have the same skill and exertional level as my DOT code. I use simple probability, to calculate the percentage of jobs with matching skill and strength to my DOT code and multiple [*sic*] that by the total number of jobs for the OEWS/SOC group. From there I further reduce to reflect full time jobs only to arrive at a number I feel is both reliable and valid.

(*Id.*). The ALJ proffered the interrogatory responses to Ms. Ryman's counsel and provided her the opportunity to submit comments, propound additional interrogatories, or request a supplemental hearing. (Tr. 337-38). The administrative transcript does not contain any comments or interrogatories from Ms. Ryman's counsel, and there is no request for a supplemental hearing.

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this sequential analysis, the claimant has the burden of proof through Step Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. § 416.920(c)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Ryman had not engaged in substantial gainful activity since applying for SSI. (Tr. 81). At Step Two, the ALJ identified coronary artery disease, chronic obstructive pulmonary disease, diabetes mellitus, hypertension, status-post aortic valve replacement, and depression as severe impairments. (*Id.*). At Step Three, the ALJ found Ms. Ryman's impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 81-83). At Step Four, the ALJ determined Ms. Ryman's RFC as follows:

After carefully considering the record, I find the claimant has the residual functional

> capacity (RFC) to perform light work (20 CFR 416.967(b)) except can stand and/or walk for four hours out of eight; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can frequently stoop, kneel, crouch, and crawl; can never work around atmospheric conditions, as defined by the *Selected Characteristics of Occupations*; can never work around hazards, such as unprotected heights or unguarded moving machinery; can understand, remember, and carry out simple instructions, and make simple work-related decisions; and can tolerate occasional changes in the work setting.

(Tr. 83). Because Ms. Ryman had no past relevant work, the ALJ proceeded to Step Five. (Tr. 85). At Step Five, the ALJ found Ms. Ryman could perform other work including as a router, collator operator, and routing clerk. (Tr. 85-86). Thus, the ALJ concluded Ms. Ryman was not disabled. (Tr. 86).

## Standard of Review

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not follow its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## Discussion

Ms. Ryman argues the ALJ erred at Step Five because the VE did not adequately explain under Social Security Ruling (SSR) 24-3p and the Commissioner's Programs Operations Manual System (POMS) HA 01260.075 how she calculated the number of representative jobs a person with Ms. Ryman's RFC could perform. (*See* ECF #10 at PageID 1147, 1152-55). The Commissioner responds that the ALJ asked the VE to explain her testimony and propounded interrogatories to the VE to comply with SSR 24-3p. (ECF #12 at PageID 1166-69). The Commissioner also argues Ms. Ryman should have first raised this issue administratively by presenting it to the ALJ, questioning the VE directly on her methodology, commenting on the ALJ's interrogatories, submitting additional evidence, propounding her own interrogatories, or requesting a supplemental hearing. (*Id.* at PageID 1169-72).

At Step Five of the sequential analysis, the ALJ determines whether the claimant, based on her RFC and vocational factors (like age, education, and work experience), can "make an adjustment to other work." 20 C.F.R. § 416.920(g)(1). Unlike the other steps, the Commissioner bears the burden to identify a significant number of jobs in the national economy that accommodate the claimant's RFC and vocational profile. *Wilson*, 378 F.3d at 548. "[T]he testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at [S]tep 5 that the claimant can perform other work." *Id.* at 549.

"VEs may provide evidence based on their professional experience and any reliable source of occupational information that is commonly used in the vocational profession and relevant under" social security regulations. *See* SSR 24-3p, 2024 WL 5256890, at *4, (Dec. 6, 2024). To

ensure vocational evidence is reliable, SSR 24-3p requires "VEs to identify the sources of the data they use and, where applicable, to explain their general approach to estimating job numbers." *See id.* SSR 24-3p also identifies several concerns for ALJs to ensure the VE explains, including "if the VE uses a data source that defines exertion, education, or skill levels differently than [the Commissioner's] regulations" or if the VE "cite[s] an occupation that is performed in a different way than identified in the source of data they used." *See id.*

SSR 24-3p was intended to *reduce* the requirements to substantiate a Step Five finding. SSR 24-3p rescinded SSR 00-4p, which previously required ALJs to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs [at a claimant's disability hearing] . . . and information in the [DOT]." *See* SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). Under SSR 24-3p, the Commissioner "will no longer require [ALJs] to identify and resolve conflicts between occupational information provided by . . . VEs and information in the DOT." 2024 WL 5256890, at *2. The Ruling explains:

> [O]ur adjudicative experience since we issued SSR 00-04p has shown that requiring our adjudicators . . . and VEs to identify and explain conflicts with the DOT is time consuming. At the hearing level, the requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified, and the requirements of SSR 00-4p might discourage . . . VEs from using occupational data in sources other than the DOT.

*Id.* Instead, "[a]t the hearing level, when the claimant is represented, [the Commissioner] expect[s] the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." *Id.*

Based on that expectation for claimant's counsel, the Commissioner argues Ms. Ryman has forfeited her argument that the VE's testimony was inadequate because she was represented by

counsel who asked only one question of the VE in the hearing, did not raise the concern now raised here, did not submit anything in response to the ALJ's further interrogatories to the VE, and did not request a supplemental hearing. (ECF #12 at PageID 1170). Even before SSR 24-3p, the Sixth Circuit generally recognized "a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of Soc. Sec.*, No. 1:11-cv-1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24, 2012) (collecting cases). While the Sixth Circuit has not addressed the issue, other district courts in this circuit that have accepted the forfeiture argument nevertheless reach the merits. *See Trista L. v. Comm'r of Soc. Sec.*, No. 2:25-cv-1184, 2026 WL 1133321, at *6-7 (S.D. Ohio Apr. 27, 2026); *see also Tajma B. v. Bisignano*, No. 2:25-cv-588, 2026 WL 2350770, at *2-3 (E.D. Va. Aug. 13, 2026) (declining to find the issue forfeited and proceeding to the merits). Thus, the District Court could conclude Ms. Ryman's argument is forfeited.

But the outcome is the same when addressing the merits. From Ms. Ryman's perspective, although the VE's response to the ALJ's interrogatory "detail[ed] the data sources she relied on and her approach to job number estimates," the VE "did not provide any detail about how much the numbers were reduced, nor did she provide any detail method [*sic*] used to reduce the numbers." (ECF #10 at PageID 1153). She contends "SSR 24-3p requires the ALJ to follow up with specific questions if the VE has not provided information consistent with SSR 24-3p and the ALJ does not have sufficient evidence to make a supported finding." (*Id.* at PageID 1154-55).

The VE stated in the hearing she reduced the number of positions in response to the ALJ's hypothetical "which [she] utilized [her] professional training and experience as well as ORS data to

reduce the numbers." (Tr. 131). The VE affirmed her testimony was consistent with the DOT but clarified the DOT "does not address . . . a reduction of standing and walking for four hours . . . and therefore I utilized my professional training and experience to provide them." (Tr. 131-32). The VE also clarified she reduced the number of all three representative jobs. (Tr. 132). Then, in response to the ALJ's interrogatories, the VE clarified that for sources of the number of jobs, she relies "on federally published information from Department of Labor including Bureau of Labor Statistics resources." (*See* Tr. 334). She then explained her methodology for finding the data for the same jobs among the different datasets' different classifications with further reduction "to reflect full time jobs only" and "to arrive at a number [she] feel[s] is both reliable and valid." (*Id.*). This discussion meets SSR 24-3p's requirements that VEs "identify the sources of the data they use" and "explain their general approach to estimating job numbers." *See* 2024 WL 5256890, at *4. Ms. Ryman concedes that "[t]he VE did complete interrogatories detailing the data sources she relied on and her approach to job number estimates." (ECF #10 at PageID 1153).

Ms. Ryman's argument that the ALJ must nevertheless ask for more explanation of the VE's specific methodology cuts against SSR 24-3p's baseline expectation that because VEs "are impartial and qualified professionals whom [the Commissioner] consult[s] because of their expertise, a more detailed inquiry into the sources of data or approaches used is not usually required." *See* 2024 WL 5256890, at *4. The ruling expressly "do[es] not dictate any specific approach to estimating job numbers" and sets out that "the numbers provided are only general estimates." *Id.* Indeed, other district courts in this circuit have described the new standards as "afford[ing] ALJs more leniency than its predecessor." *See Angela J. v. Bisignano*, No. 3:26-cv-199, 2026 WL 3072765, at *4 (W.D. Ky. Oct. 14, 2026) (internal quotation marks omitted); *Ayers v.*

*Bisignano*, No. CV 6:25-39, 2025 WL 3143036, at *5 (E.D. Ky. Nov. 10, 2025) (noting the requirements in SSR 24-3p "give even more leniency to the ALJ's"); *see also Tajma B. v. Bisignano*, 2:25-cv-588, 2026 WL 2553952, at *9 (E.D. Va. May 28, 2026) ("further elaboration under the new rules is the exception to the rule"), *report and recommendation rejected in part on forfeiture and adopted on the merits*, 2026 WL 2350770 (E.D. Va. Aug. 13, 2026). Thus, Ms. Ryman's argument that the ruling requires the ALJ to make specific inquiries about the VE's mathematical formulae for calculating the number of positions for each representative job the VE cited is unpersuasive.

Ms. Ryman also argues that the specific RFC limitation to walking and standing for four hours would seriously erode the available unskilled jobs at the light work level, as that level requires "a good deal of walking" and "relatively few unskilled light jobs are performed in a seated position." (*See* ECF #10 at PageID 1153-54). In the hearing, the VE addressed this tension between the RFC and light work, stating her job-number estimates "require[d] a reduction in the standing and walking for four hours, of which I utilized my professional training and experience as well as ORS data to reduce the numbers." (Tr. 131). The VE clarified she also made adjustments for other limitations in the RFC (like climbing ladders, ropes, and scaffolds vs. climbing ramps and stairs) and affirmed she made those adjustments for all three representative jobs cited. (Tr. 131-32). Thus, the VE addressed the tension Ms. Ryman now raises: that a limitation to walking for four hours would reduce the available jobs at the light exertion level, yet, in the VE's professional opinion, a significant number of those jobs still existed. This opinion is substantial evidence to support the ALJ's finding at Step Five. *See Wilson*, 378 F.3d at 549.

Thus, regardless of whether Ms. Ryman forfeited her argument by not raising the issue in the hearing with the VE or when the ALJ sought additional clarification, she has not shown the ALJ failed to follow SSR 24-3p. I thus decline to recommend remand on this basis.

## CONCLUSION AND RECOMMENDATION

After reviewing the record, the parties' arguments, and the law, I recommend the District Court **AFFIRM** the Commissioner's decision denying supplemental security income.

Dated: November 16, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).**